UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THOMAS SENTEMENTES, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | 3:20cv1827 (MPS) |
| | : | |
| NED LAMONT, et al., | : | |
| Defendants. | : | |

**INITIAL REVIEW ORDER**

Plaintiff Thomas Sentementes, incarcerated at Osborn Correctional Institution in Somers, Connecticut, filed this case against fifteen individuals for damages: Governor Ned Lamont, Bridgeport Correctional Center ("BCC") Warden Robert Martin, Public Defender Thomas Leaf, Bethel First Selectman Matthew Knickenbocker, Bethel Police Chief Jeffrey Finch, Bethel Police Sergeant Rost, Bethel Police Corporal Zor, Bethel Police Officer Emerson,[1] Pasqualina Bastone, Daniel Sentementes, President of Danbury Hospital John Doe, Bank of America CEO Brian Moynihan, Jane Doe of the Bethel Town Hall, Liberty Mutual CEO David Long, Danbury Police Detective Labonia, Bethel Building Inspector John Doe, Bethel Building Inspector John Doe, Bethel sign Department Jane Doe. Compl., ECF No. 1.

Sentementes previously filed an action entitled *Sentementes v. Town of Bethel*, No. 3:20-cv-580(MPS) against these defendants asserting the same factual allegations. The Court dismissed Sentementes' Fourth Amendment claims asserted in that case on initial review of his original and amended complaints. *Sentementes*, 20cv580, ECF Nos. 18, 20.

---

[1] Although the case caption spells the name of this defendant as Emeson, it is clear from the allegations of the complaint that Sentementes means Emerson.

1

The court's order dismissing the original complaint under 20cv580 provided a thorough discussion of its reasons for dismissal of, *inter alia*, Sentementes' § 1983 claims against the private citizen defendants, Public Defender Leaf, the Town of Bethel, the Danbury Defendants, and his claims under the Fourth Amendment for false arrest, false imprisonment and malicious prosecution. ECF No. 18. The court also explained that any claims seeking relief for violations of the Fourteenth Amendment arising from events that occurred prior to his incarceration at BCC or during his incarceration at BCC were severed from 20cv580 and dismissed without prejudice. *Id.* at 18-20, 26. The court declined to exercise jurisdiction over Sentementes' state law claims and dismissed these claims without prejudice. *Id.* at 27.

On review of Sentementes' amended complaint in 20cv580, the court determined, *inter alia*, that Sentementes had not alleged any plausible constitutional claims against the Bethel Building Inspector John Does and Bethel Sign Department Jane Does; had not alleged the personal involvement of Ned Lamont, the Bethel First Selectman (now identified as Knickenbocker), and Bethel Chief of Police Jeffery Finch in any constitutional violation; had not alleged any plausible civil rights claim against the Danbury Police Defendants based on a failure to investigate his claims against Bank of America; and had not stated any plausible Fourth Amendment claims Bethel Officer Emerson, Corporal Zor, and Sergeant Rost. *See* ECF No. 20. In addition, the court concluded that Sentementes' amended allegations were insufficient to state a plausible claim of conspiracy to violate his civil rights to support his claims against Danbury Hospital President Doe, Bank of America CEO Monihan, Liberty Mutual CEO Long, Bastone, Daniel Sentementes, and Public Defender Leaf. *Id.* Finally, the court severed and dismissed his

2

Fourteenth Amendment claims against BCC Warden Martin, and it declined to exercise supplemental jurisdiction over the state law claims. *Id.*

In the instant complaint, Sentementes explains that he is now alleging the Fourteenth Amendment claims that were severed without prejudice from his action in docket 20cv580. As Sentementes has essentially asserted the same allegations against the same defendants named in his 20cv580 action, the court incorporates herein the factual allegations from the rulings in 20cv580, ECF Nos. 18, 20. The court will, however, include facts as necessary for its analysis and discussion of Sentementes' claims in this case.

## I.     Standard of Review

The court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. This requirement applies to all prisoner filings regardless whether the prisoner pays the filing fee. *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 159 (D. Conn. 2005) (citing *Carr v. Dvorin*, 171 F.3d 115 (2d Cir. 1999) (*per curiam*)). Here, the plaintiff is proceeding in forma pauperis. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

3

misconduct alleged." *Iqbal*, 556 U.S. at 678 (internal quotation marks and citation omitted). "Although courts must interpret a *pro se* complaint liberally, the complaint will be dismissed unless it includes sufficient factual allegations to meet the standard of facial plausibility." *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations omitted).

## II.    DISCUSSION

In the instant complaint, Sentementes asserts the following causes of action: Fourteenth Amendment violation; false statements; malicious prosecution; harassment; kidnapping; cruel and unusual punishment; and intentional infliction of emotional distress.

### A.    Fourteenth Amendment Violation

As an initial matter, the court notes that Sentementes' allegations under this count do not raise any Fourteenth Amendment equal protection concerns. Accordingly, the court considers whether Sentementes has alleged any plausible Fourteenth Amendment due process claims.

A Fourteenth Amendment due process claim can be either procedural or substantive. While procedural due process protects against deprivations of life, liberty or property without constitutionally adequate procedures, substantive due process protects these substantive rights "no matter the process employed by the State." *Case v. Anderson*, No. 16-CV-983 (NSR), 2017 WL 3701863, at *14 (S.D.N.Y. Aug. 25, 2017). "Substantive due process protects individuals against government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect or ill-advised.'" *Lowrance v. Achtyl*, 20 F.3d 529, 537 (2d Cir. 1994) (internal citations omitted).

### 1.    Building Inspectors John Doe, Sign Department Jane Doe, Officer Emerson First Selectman Knickenbocker

4

Sentementes alleges that the John Doe Building Inspectors and Officer Emerson questioned him while he was fixing a wall outside of the Bethel Wine and Spirits and, after a confrontation, he was able to finish his work. ECF No. 1 at ¶ 3. After he allegedly later brought drawings to the Building Department and the Sign Department, an argument allegedly brought Police Officer Emerson to the scene and was resolved when Sentementes was able to show that the Town was using the Bethel Police Department to harass him. *Id.* He alleges further that First Selectman Knickenbocker did nothing to correct this conduct, although it is against policy for employees "to lie and harass businessmen in Bethel." *Id.*

Sentementes has not alleged that he was denied any procedural due process. Further, his allegations do not specify the basis of the alleged "confrontation" or "argument" that brought Officer Emerson to the scene. Moreover, his allegations indicate that he obtained a resolution in his favor after each dispute with the defendants. Accordingly, Sentementes' vague and conclusory allegations about the wrongful conduct of the Bethel Building and Sign Department Does and Officer Emerson do not raise any inference that he was subjected to arbitrary, conscience-shocking, or oppressive government action. *Lowrance*, 20 F.3d at 537.

Absent allegations to suggest that the Bethel Building and Sign Department Does or Officer Emerson violated his right to due process under the Fourteenth Amendment, any allegation that First Selectman Knickenbocker is liable for neglecting to correct the improper conduct of the Bethel defendants necessarily fails to state a claim upon which relief may be granted. Sentementes cannot assert a claim that First Selectman Knickenbocker is liable for failure to correct misconduct by these Bethel employees. The Second Circuit has instructed that a plaintiff cannot allege that an official is liable "by reason of [their] supervision of others who

committed the violation" but must instead "plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachmann*, 983 F.3d 609, 619-20 (2d Cir. 2020). Accordingly, Sentementes has not raised an inference of any Fourteenth Amendment violation based on these allegations against Selectman Knickenbocker, the Bethel Building Inspector John Does, Bethel Sign Department Jane Doe, and Officer Emerson.

### 2.   Bastone, Leaf, Daniel Sentementes, John Doe President of Danbury Hospital, Bank of America CEO Moynihan, Liberty CEO David Long

Although his claims are difficult to discern, Sentementes appears to allege his Fourteenth Amendment claims against Bastone in connection with her calling the Redding and Bethel Police to complain about Sentementes smashing bottles; against his brother Daniel Sentementes for failing to provide him his inheritance so that he could make bond; against CEO Moynihan for failing to have Sentementes' funds released so that he could make bond; and against CEO Long for failing to produce information about Bastone's conduct to commit insurance fraud that would have aided with Sentementes' defense or plea agreement. It is unclear what claim he makes against the Danbury Hospital CEO.

A Fourteenth Amendment claim requires allegations showing some state action.   A plaintiff may demonstrate that the conduct of a "nominally private entity" constitutes state action under section 1983 in three ways: "(1) the entity acts pursuant to the 'coercive power' of the state or is 'controlled' by the state (the compulsion test); (2) the state provides 'significant encouragement' to the entity, the entity is a 'willful participant in joint activity with the [s]tate,' or the entity's functions are 'entwined' with state policies (the joint action test or close nexus test); or (3) when the entity 'has been delegated a public function by the [s]tate,' (the public

6

function test)." *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (quoting *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001)). "The fundamental question under each test is whether the private entity's challenged actions are 'fairly attributable' to the state." *Fabrikant v. French*, 691 F.3d 193, 207 (2d Cir. 2012) (citations omitted). Sentementes' allegations raise no inference that any of the private citizen defendants engaged in conduct that could be fairly attributed to the state. Moreover, as explained in the courts' initial reviews in the case under docket 20cv580, Sentementes cannot bring a section 1983 claim against the private citizen defendants or Public Defender Leaf as he has not plausibly alleged that they conspired with state actors. ECF No. 18 at 8-11; ECF No. 20 at 6-9.

Because Sentementes has not alleged any plausible conspiracy between the state actors and the private citizen defendants or Public Defender Leaf, Sentementes cannot allege any Fourteenth Amendment violation claims against these individuals.[2]

### 3.   Bethel Police Officer Emerson, Sergeant Rost, and Corporal Zor – January 28, 2019 standoff and his subsequent arrests

Under his count asserting a Fourteenth Amendment violation, Sentementes has alleged conduct by Bethel Police Officer Emerson, Sergeant Rost and Corporal Zor concerning his "standoff" with the Bethel Police on January 28, 2019,[3] and his subsequent arrest two weeks later (February 11, 2019). Generally, constitutional claims arising from a plaintiff's arrest are

---

[2]   The court incorporates herein the discussion of the private citizen defendants and Public Defender Leaf from its prior initial review orders in 20cv580. ECF No. 18, ECF No. 20.

[3]   The court notes that Sentementes has another action under docket 20cv1826 in which he has alleged plausible Fourth Amendment claims against Bethel Police Officer Emerson based on his conduct that allegedly occurred on January 28, 2019. 20cv1826, ECF No. 15 at 8 (noting that Sentementes refers to arrest that took place on January 28, 2019 but records reflect arrest occurred on January 25, 2019).

governed by the Fourth rather than the Fourteenth Amendment. *Graham v. Connor*, 490 U.S. 386, 394-95 (1989) (holding excessive force claims "aris[ing] in the context of an arrest" fall under the Fourth Amendment); *Gerstein v. Pugh*, 420 U.S. 103, 125 n. 27 (1975) ("The Fourth Amendment was tailored explicitly for the criminal justice system, and its balance between individual and public interests always has been thought to define the 'process that is due' for seizures of person or property in criminal cases."); *see also Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 842 (1998) ("where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing [the] claims.") (quotation marks omitted).

However, the Second Circuit has indicated that the Fourteenth Amendment applies to claims concerning health and safety of detainees who have been arrested but not yet arraigned. *See Shakir v. Stankye*, 805 Fed. App'x 35, 41 (2d Cir. 2020) (2d Cir. Mar. 24, 2020) ("we have treated even pre-arraignment conditions of confinement claims as arising under the Fourteenth Amendment") (summary order) (citing *Weyant v. Okst*, 101 F.3d 845, 856–57 (2d Cir. 1996) (analyzing a pre-arraignment arrestee's denial of medical treatment claim under the Fourteenth Amendment standard).[4] To set forth a due process claim under the Fourteenth Amendment for

---

[4] Sentementes also alleges another count of "Cruel and Unusual Punishment" against Bastone and the Bethel Police Departments based on his alleged kidnapping, false incarceration, and malicious prosecution. ECF No. ¶ 53. However, the Eighth Amendment's Cruel and Unusual Punishment Clause is not applicable to the plaintiff as an arrestee and pretrial detainee. *See Kingsley v. Hendrickson*, 576 U.S. 389 (2015) (distinguishing between pretrial detainee's claims, which are brought under the Fourteenth Amendment, and post-conviction detainee's claims, which are brought under the Eighth Amendment). Accordingly, Sentementes' Eighth Amendment cruel and unusual punishment claims must be dismissed. *See* 28 U.S.C. § 1915A(b)(1). Moreover, these allegations are essentially another way of stating Sentementes' Fourth Amendment claims asserted in his prior case, 20cv580.

deliberate indifference to health and safety, a plaintiff must allege facts to satisfy two prongs: (1) an "objective prong" showing that the plaintiff's condition of confinement posed an unreasonable risk of serious harm to the plaintiff, and (2) a "*mens rea* prong" showing that the state actor's conduct amounts to deliberate indifference to that objectively serious risk of harm. *See Darnell v. Pieneiro*, 849 F. 3d 17, 29 (2d Cir. 2017); *Charles v. Orange Cty.*, 925 F.3d 73, 86 (2d Cir. 2019).

Under the objective prong, a detainee must allege that "the conditions, either alone or in combination, pose[d] an unreasonable risk of serious damage to his health ... which includes the risk of serious damage to physical and mental soundness." *Darnell*, 849 F.3d at 30 (internal quotation marks and citations omitted). A district court evaluates the conditions to which the detainee was exposed in the context of contemporary standards of decency and addresses, *inter alia*, whether the detainee has been deprived of basic human needs including, for example, food, clothing, shelter medical care, and reasonable safety, or has been subjected to an unreasonable risk of serious harm to his or her future health. *Id.* (internal quotation marks and citations omitted).

Relevant to the *mens rea* element, "deliberate indifference, in the context of a Fourteenth Amendment due process claim, can be shown by something akin to recklessness, and does not require proof of a malicious or callous state of mind." *Charles*, 925 F.3d at 86 (citing *Darnell*, 849 F.3d at 33–34). Under the *mens rea* prong, a pretrial detainee must allege "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the

condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. At the same time,

"negligence … does not, without more, engender a constitutional claim." *Sanders v. Laplante*,

No. 3:19-CV-01151 (CSH), 2019 WL 5538118, at *3 (D. Conn. Oct. 25, 2019); *see*

*also Darnell*, 849 F.3d at 36 ("[A]ny § 1983 claim for a violation of due process requires proof

of a *mens rea* greater than mere negligence.").

Sentementes alleges that the standoff on January 28, 2019 ended with his agreement to go

with the defendant officers "to be seen at Danbury Hospital." ECF No. 1 at ¶ 7. Thus, to the

extent that the Fourteenth Amendment applies to the incident alleged to occur on January 28,

2019, Sentementes' allegations indicate that the defendant officers ensured that Sentementes

received medical attention. Because Sentementes' complaint contains no factual allegations

suggesting a Fourteenth Amendment deprivation based on defendants' indifference to his health

and safety, Sentementes has not alleged any plausible Fourteenth Amendment claims against

Bethel Police Officer Emerson, Sergeant Rost, and Corporal Zor.

### 4.    Ned Lamont

Sentementes alleges that Governor Lamont falsely prosecuted him and knowingly and

willingly quashed video evidence that could prove Sentementes' innocence; Sentementes alleges

further that Governor Lamont maliciously prosecuted him with perjured testimony. ECF No. 1 at

¶ 20. Sentementes' claim against Governor Lamont "embraces not only the inarguable legal

conclusion, but also the fanciful factual allegation" that Governor Lamont should be liable under

section 1983 for Sentementes' alleged malicious prosecution. *See Neitzke v. Williams*, 490 U.S.

319, 325 (1989). Prosecutions in Connecticut are the responsibility of the Office of the Chief

State's Attorney. *See Harasz v. Katz*, 239 F. Supp. 3d 461, 475 (D. Conn. 2017) (noting that,

under state statutory scheme, responsibility for initiating criminal proceedings rests with Office

of the State's Attorney). Accordingly, Sentementes' allegations about Governor Lamont's

personal involvement in his prosecution is factually implausible. Even if Governor Lamont had

any personal involvement in Sentementes' prosecution, Lamont would be entitled to absolute

immunity. Prosecutors receive absolute immunity from suit under § 1983 when they engage in

"advocacy conduct that is 'intimately associated with the judicial phase of the criminal process.'"

*Giraldo v. Kessler,* 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409,

430 (1976)); *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995) (noting that

prosecutorial immunity from § 1983 liability is broadly defined, and covers 'virtually all acts,"

associated with prosecutor's function as an advocate). Accordingly, Sentementes has not alleged

any plausible Fourteenth Amendment claims against Governor Lamont.

### 5.    Warden Martin

Sentementes alleges that during his confinement at BCC, Warden Martin failed to

provide him with access to legal research materials, such as the Connecticut Practice Book and

the Connecticut General Statute Book. ECF No. 1 at ¶ 21. Sentementes asserts that Judge

D'Andrea ordered BCC to provide him with access to such materials, but Warden Martin stated

(after being confronted with the mittimus) that "no judge was going to tell him what to in [my]

prison." *Id.*

It is well established that inmates have a constitutional right of access to the

courts. *See Lewis v. Casey*, 518 U.S. 343, 350 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 821,

828 (1977)).[5] In Connecticut, legal assistance in state criminal matters is provided by the Office

---

[5] The constitutional basis of the right of access to the courts is unsettled but the Supreme Court has located
it in various provisions, including the Privileges and Immunities Clause of Article IV, section 2, the Petition Clause

of the Public Defender, while legal assistance in civil matters relating to conditions of confinement is provided by the Inmate Legal Aid Program. *Kaminski v. Semple*, No. 3:19-CV-143 (SRU), 2019 WL 1454950, at *3 (D. Conn. Apr. 2, 2019) *aff'd*, No. 19-973-CV, 2019 WL 6904145 (2d Cir. Dec. 18, 2019). If an inmate chooses to forgo that assistance and to represent himself, the DOC has no obligation to provide other legal services to assist the inmate. *Santiago v. Whidden*, No. 3:10-cv-1839 (VLB), 2012 WL 668996, at *4 (D. Conn. Feb. 29, 2012) (citing *United States v. Sykes*, 614 F.3d 303, 311 (7th Cir. 2010) ("a defendant who declines appointed counsel and instead invokes his constitutional right to self-representation ... 'does not have a right to access to a law library'")); *see also Spates v. Manson*, 644 F.2d 80, 85 (2d Cir. 1981) (Sixth Amendment right to represent oneself "does not carry with it a right to state financed library resources where state-financed legal assistance is available."). Here, Sentementes has alleged that he relieved Public Defender Leaf from his appointment and proceeded *pro se*, although Leaf served as stand-by counsel. ECF No. 1 at ¶ 11.

Thus, Sentementes cannot establish a plausible constitutional violation based on denial of access to legal research "because the complaint's factual allegations establish that he chose to represent himself and he had standby counsel in his criminal proceeding." *Gray v. Bansley/Anthony/Burdo LLC*, No. 3:19CV1869 (KAD), 2020 WL 292230, at *6 (D. Conn. Jan. 21, 2020). Accordingly, Sentementes' Fourteenth Amendment claim asserted against Warden Martin is dismissed.

---

of the First Amendment, the Due Process Clauses of the Fifth and Fourteenth Amendment Due Process Clauses, and the Equal Protection Clause of the Fourteenth Amendment. *See Christopher v. Harbury*, 536 U.S. 403, 415 n.12 (2002).

### 6.     Danbury Police Detective LaBonia and Bethel Chief of Police Finch

The complaint includes no facts to suggest the direct personal involvement of Danbury Police Detective Labonia and Bethel Chief of Police Jeffery Finch in a plausible violation of Sentementes' Fourteenth Amendment rights. The court notes that under his breach of fiduciary duties claim, Sentementes has alleged that Detective Labonia failed his fiduciary duty and "constitutional duty to equal protection of the law" by not investigating Sentementes' claim of being robbed of $17,000. ECF No. 1 at ¶ 42. However, as previously explained by this court's initial review order in 20cv580, "Sentementes has no freestanding constitutional right to a police investigation." ECF No. 18 at 21(citing cases). Accordingly, any Fourteenth Amendment claims for damages asserted against these defendants must be dismissed.

### B.     State Law Claims

Sentementes also asserts state law claims of false statements, breach of fiduciary duties, malicious prosecution, harassment, and kidnapping. The court will not consider the plausibility of Sentementes' state law claims because the court has determined that the federal Fourteenth Amendment claims raised by the instant complaint should be dismissed. Thus, the court declines to exercise supplemental jurisdiction over the state law claims, which are dismissed without prejudice. *See* 28 U.S.C. § 1367(c)(3) (if federal court dismisses all federal claims, it may decline to exercise supplemental jurisdiction over supplemental state law claims).

## CONCLUSION

For the foregoing reasons the Complaint is DISMISSED. *See* 28 U.S.C. § 1915A(b)(1). The court declines to exercise jurisdiction over Sentementes' state law claims, which are dismissed without prejudice.

The clerk is instructed to close this case.


_____/s/_____
Michael P. Shea
United States District Judge

**SO ORDERED** this 25th day of May 2021, at Hartford, Connecticut.

14